Nellie J. Moore *vs.* Hazard J. Wetherell, *Ex'r.*

JUNE 23, 1950.

Present: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is an action in assumpsit to recover the value of domestic services rendered by plaintiff to her mother during the latter's life. Plaintiff duly filed her claim, which was disallowed by the defendant as executor of the mother's will, and after a jury trial in the superior court a verdict was rendered for the plaintiff for $18,820. Thereafter the trial justice granted defendant's motion for a new trial unless plaintiff remitted all of the verdict in excess of $10,000. Plaintiff accordingly filed such remittitur and the case is before this court on defendant's exceptions to the denial of his motions for a directed verdict and for a new trial unconditionally.

Plaintiff is one of seven children of Ellen J. Moore, hereinafter called the mother, who died January 7, 1946 leaving a will which was duly probated in the probate court of the city of Providence. Defendant is the husband of Esther Wetherell, one of said children, and he is also the executor of the mother's will.

The evidence for plaintiff tended to show the following facts. In the fall of 1926 plaintiff at the request of her mother gave up her work in the Bourne Rubber Company in order to stay at home, do cooking, housework, laundering and ironing for her mother and father, and generally to take care of a ten-room house seven days a week from about 6:30 in the morning until 6:30 or later in the evening. Her mother had promised: " 'If you stay home and do the work—if you give up your job and stay home and do the work, I will see that you are well paid.' As a matter of fact, she said she would see that I had the lion's share." When plaintiff suggested that she would not desire to look for a job if and when her mother might decease, the mother replied: "You need never worry about having to go out looking for a job, because you will be well provided for." These statements were repeated substantially by the mother on several different occasions to certain mem-

bers of the family and others, who also testified for plaintiff.

Up to 1937 plaintiff performed all the work with a little help from her mother, and also at her mother's request assisted her father in caring for other property in which the mother had an interest. The mother's eyesight and health began to fail noticeably about 1937 and continued progressively until her death in January 1946. During the last two years of her life she was in need of considerable nursing care which was provided by plaintiff day and night. Plaintiff received her own board and room, together with an average of about $100 a year for clothing and spending money.

In 1947 she received from her father and mother what purported to be properly executed deeds to several pieces of property. At that time she knew nothing of the will which had been executed by the mother in August 1931. She understood these deeds were her compensation for the services she had agreed to render. They were later set aside for want of valid delivery in a suit brought by Esther Wetherell, which was captioned *Wetherill* v. *Moore,* 73 R. I. 140. Thereupon, with permission of the probate court, plaintiff filed out of time her instant claim for services, and upon its disallowance by defendant as executor a jury trial was had in the superior court. Evidence was there introduced in support of the alleged promise of the mother and the performance of all the services by plaintiff. Expert testimony was also given to the effect that services of that nature and extent would be worth $20 a week ordinarily and $35 a week where nursing care was added, as in the last two years of the mother's life. The plaintiff was corroborated substantially by a brother, one of her sisters and the latter's husband, and also by a cousin.

On the other hand defendant introduced testimony tending to show that the mother was not in failing health or in need of assistance for the housework from 1926 to 1936 or 1937; that in 1931 she executed her will, at which time

she was in good mental and physical health; that the will gave to plaintiff a one-third interest in certain property and a share in the residue; that the will never was changed thereafter although the mother continued in good health until about 1937, when she began to suffer failing health and eyesight; and that the mother always paid her bills. It was further testified by defendant's wife that plaintiff did not leave her work on account of her mother's request or needs but because she did not desire to continue with a new firm that had taken over the Bourne Rubber Company, and that up to about 1937 the mother did practically all the cooking and housework and waited on plaintiff, rather than the reverse.

Defendant presented no testimony, however, to satisfactorily contradict the evidence for the plaintiff that at least from about 1937 the mother was not able to do the housework and became progressively in need of attention, particularly during the last two years of her life. Nor did defendant present any evidence as to the value of plaintiff's services if they were found to have been rendered in accordance with the mother's request and promise to pay. No exception was taken to an extensive and fair charge by the court, and the jury returned a verdict for the plaintiff for $18,820.

On defendant's motion for a directed verdict the evidence must be viewed most favorably to the plaintiff. In our opinion there was evidence, if thus considered, which created material issues of fact for determination by the jury. Therefore defendant's motion was properly denied and this exception is overruled.

In deciding defendant's motion for a new trial the trial justice made certain preliminary observations not material to the issues and then passed his independent judgment on the evidence. He commented favorably on the credibility of plaintiff's corroborating witnesses and unfavorably upon the attitude and credibility of defendant's wife, who was the chief witness for defendant and whose testimony

tended to exaggeration and was materially contradicted in certain respects by other members of her family. Accordingly he expressly found that the verdict on the issue of liability was in accordance with the preponderance of the evidence.

But he also found that the amount of the verdict was grossly excessive. This was attributed to certain unfair and sympathetic arguments by plaintiff's counsel to the jury, but in the expressed judgment of the trial justice such arguments did not produce or affect the verdict as to *liability*. He then analyzed the conditions prevailing at different periods between September 1926 and January 1946, gave credit to plaintiff for services rendered according to values that he personally considered reasonable, and finally ordered a remittitur of all of the verdict in excess of $10,000.

In our opinion the analysis and appraisal of the damages by the trial justice are reasonable and merit approval if there is evidence in the record to support the values which he used as bases in his computation. While his own experience, upon which he relied, probably provided a standard more in keeping with existing conditions and the evidence than did the testimony of the expert, we nevertheless find no evidence of such values in the record. The only testimony on that issue was by the expert who fixed a minimum of $20 per week for ordinary work and $35 per week when nursing care was added during the last two years of the mother's illness. Since we are bound by the evidence in the record, we may not on review approve the particular computation of the trial justice, although in the circumstances here an independent review of the transcript makes the result appear reasonable.

In other words, from our examination of the transcript we reach the same result by another method of computation. The transcript discloses, as the trial justice observed, that plaintiff probably did less than she testified to and more than Mrs. Wetherell indicated. Likewise it is common

knowledge that the conditions during the depression years from 1930 to 1936 had considerable adverse effect in general on the value of such services in that period. Moreover there seems to be no substantial contradiction of the fact that the mother was unable to do housework after 1937; that plaintiff alone performed those services; and that she also rendered extensive nursing services during the last two years of her mother's life.

However, there is evidence that prior to 1936 or 1937 the mother enjoyed good health; that she was in good mental and physical condition in 1931 when she made her will; and that for part of the time she did a considerable portion of the cooking and housework. When that is considered, together with the known conditions during the depression years and the fact that plaintiff received her board, room and at least $100 a year for clothes and spending money, it is not unreasonable to conclude from an examination of the record alone that there was little, if any, credit balance due plaintiff for services rendered up to about 1937.

From that time until January 1946, however, she undoubtedly performed considerable services, including nursing care of her mother, as she testified. At the rate fixed by the expert for such services, namely, $20 per week up to 1944 and $35 weekly for the last two years, the gross credit would be about $10,920. Deducting therefrom an average of $100 annually for nine years which was paid by the mother to plaintiff for clothes and spending money, the net result would be a credit of about $10,020. That result is based on evidence which we find in the record and is so close to the amount of $10,000 fixed by the trial justice that we may approve his conclusion although we use a different method of computation. The defendant's exception to the denial of his motion for a new trial is overruled.

All of the defendant's exceptions are overruled, and the

case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Walter J. Hennessey, Edward F. McElroy,* for plaintiff.
*Francis J. O'Brien,* for defendant.