Elvira Moreno ALVAREZ MARTINEZ, widow of Samuel Martinez, aka Andres T. Rodriques, deceased, Plaintiff,

v.

The INDUSTRIAL COMMISSION OF the STATE OF UTAH, Heaton Brothers Roofing and/or State Insurance Fund and Second Injury Fund, Defendants.

No. 20348.

Supreme Court of Utah.

May 19, 1986.

Bradley H. Parker, Randall Bunnell, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Gilbert Martinez, (Second Injury), Mary A. Rudolph, Salt Lake City, for defendants.

STEWART, Justice:

The plaintiff, Elvira Moreno Alvarez Martinez, is a nonresident alien living in Mexico who claims workmen's compensation benefits for the death of her husband, Samuel Martinez, who was killed in an industrial accident while working for Heaton Brothers Roofing in Utah. The sole issue on appeal is whether the Utah Workmen's

Compensation Act is unconstitutional insofar as it discriminates against nonresident alien dependents as to death benefits payable because of the death of a worker in Utah.

The parties have stipulated that the plaintiff is entitled to the maximum statutory benefits available for her husband's accidental death in the course of his employment. The Industrial Commission held that the death benefits due her were $255 per week for 312 weeks for a total of $79,560,[1] reduced by one-half, to $39,780, pursuant to U.C.A., 1953, § 35–1–72, which reads:

> When any alien dependent of the deceased resides outside of the United States of America and any of its dependencies and Canada, such dependent shall be paid not to exceed one-half the amount provided herein.

The plaintiff raises four challenges to the constitutionality of § 35–1–72 under the federal Constitution. She asserts that it violates (1) the Supremacy Clause, (2) the Due Process Clause, (3) the Equal Protection Clause, and (4) the plenary power of Congress to control the immigration and naturalization of aliens.

## I.

■ A workmen's compensation statutory provision that discriminates against a nonresident alien dependent violates the Supremacy Clause of the United States Constitution, if the provision violates a treaty between the United States and the dependent's country. *See Iannone v. Radory Construction Corp.*, 285 A.D. 751, 141 N.Y.S.2d 311, 317 (N.Y.App.Div.1955), *aff'd*, 1 N.Y.2d 671, 150 N.Y.S.2d 199, 133 N.E.2d 708 (1956); *Antosz v. State Compensation Commissioner*, 130 W.Va. 260, 43 S.E.2d 397, 400 (1947). However, there is no treaty between the United States and Mexico which extends to Mexican nationals the same rights and privileges under United States workmen's compensation laws as United States citizens have. Furthermore,

the general provisions of the charters of the Organization of American States and of the United Nations provide no such rights. *Pena v. Industrial Commission*, 140 Ariz. 510, 683 P.2d 309, 315 (Ariz.Ct.App.1984). Since § 35–1–72 does not conflict with a treaty to which the United States and Mexico are signatories, § 35–1–72 does not violate the Supremacy Clause of the federal Constitution.

## II.

The plaintiff also contends that a state statute which interferes unreasonably with a fundamental right or a vested property interest violates the Due Process Clause of the Fourteenth Amendment. She relies on *United States v. Texas*, 252 F.Supp. 234, 251 (W.D.Tex.), *aff'd*, 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434 (1966), for the proposition that her workmen's compensation benefits are fundamental property rights that have been arbitrarily diminished.

■ A dependent's right to workmen's compensation death benefits is created and defined by statute. *Pedrazza v. Sid Fleming Contractor, Inc.*, 94 N.M. 59, 607 P.2d 597, 599 (1980). *Accord Halling v. Industrial Commission*, 71 Utah 112, 118, 263 P. 78, 80 (1927). The right of a worker's dependents to death benefits is an original and independent right, separate from the worker's right to benefits for injuries he suffers in an industrial accident. The dependent's right is not derived from the right of an employee to compensation benefits. *Halling*, 71 Utah at 118, 263 P. at 80; *Mason v. Union Pacific Railroad*, 7 Utah 77, 81, 24 P. 796, 797 (1890); 2 A. Larson, *Workmen's Compensation Law* §§ 64.00, 64.10, 64.11 (1983). The right to death benefits vests at the death of the worker pursuant to the Workmen's Compensation Act, which creates that right. *Pedrazza*, 94 N.M. at 61–62, 607 P.2d at 600. Since the right to death benefits arises from the statute, it is also subject to the limitations imposed by it. In short, the Act does not deprive the plaintiff of a vested right.

1. See U.C.A., 1953, § 35–1–68.

What vests is the right defined by the statute itself.

Furthermore, while it is clear that § 35-1-72 treats certain nonresident alien dependents differently than other dependents, we cannot conclude that the Act is so arbitrary as to be unconstitutional. The workmen's compensation laws of this state are part of several interrelated social welfare enactments. The character and scope of the total fabric of such legislation differs from the social welfare strategies employed by foreign countries. Since the constitutionality of worker's compensation death benefits must be viewed in light of the laws and history of this country, the extension of full death benefits to foreign nationals is not constitutionally required.

### III.

■ The plaintiff next argues that § 35-1-72 is unconstitutional because it denies her equal protection of the law. She asserts that the Act's classifications, which allow Canadian nonresident alien dependents full death benefits while reducing the death benefits due nonresident aliens from all other countries, are racially discriminatory and have no rational relation to any legitimate state interest.

In the first place, the statute is not based on race at all. It applies to the citizens of all countries except Canada, unless a treaty overrides it.

Furthermore, as stated above, it has long been the law of Utah that "the rights of the employee's dependents ... [are] separate and distinct from the rights of the employee for such injury." *Halling*, 71 Utah at 122, 263 P. at 81. *See* 2 A. Larson, *Workmen's Compensation Law* §§ 64.11-64.13 (1983 and Supp.1984), and cases cited therein.[2] Because a dependent's right is *sui generis* and not derived from the worker's own rights, the determinative issue is whether the Equal Protection Clause

of the Fourteenth Amendment is violated by treating nonresident aliens differently than resident aliens and Canadians.

In general, the standard of review under the Equal Protection Clause with respect to resident aliens is that classifications made on the basis of alienage are subject to heightened judicial scrutiny because they are based on a suspect classification. *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971). That status is not, however, accorded *nonresident aliens*. *De Tenorio v. McGowan*, 510 F.2d 92, 101 (5th Cir.), *cert. denied*, 423 U.S. 877, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975); *Pedrazza*, 94 N.M. at 62, 607 P.2d at 600. In *Pedrazza*, the New Mexico Supreme Court held that aliens who resided within the territorial jurisdiction of the state were entitled to equal protection of the laws with respect to workmen's compensation laws, *Pedrazza*, 94 N.M. at 62, 607 P.2d at 600-01, but that residents of the Republic of Mexico "are beyond the reach of the equal protection clause." *Id.* at 62, 607 P.2d at 600. That conclusion follows from the express language of the Equal Protection Clause which declares: "No state shall ... deny to any person *within its jurisdiction* the equal protection of the laws." U.S. Const. amend. XIV (emphasis added). The New Mexico court, on facts similar to the instant case, held that since the plaintiffs were nonresident aliens and "beyond the protective reach of the equal protection clause," they had no basis for challenging the New Mexico workmen's compensation statute which denied them death benefits. *Pedrazza*, 94 N.M. at 62, 607 P.2d at 600.

That holding follows from *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), which held that the rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment "are universal in their application, to all persons within the territorial jurisdiction ...." *Id.* at 369,

---

2. By holding that the dependent's right to compensation is independent of the worker's right, courts have awarded compensation despite releases signed by the worker and statutes of limitations which would act as a bar to a claim by the worker. *See* 2 A. Larson, Workmen's Compensation Law §§ 64.11-64.13 (1983 and Supp.1984), and cases cited therein. *See also Halling*, 71 Utah at 122, 263 P. at 80-81.

6 S.Ct. at 1070. *Johnson v. Eisentrager,* 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), also held that the Equal Protection Clause was territorially limited. "[I]n extending constitutional protections beyond the citizenry, the Court has been at pains to point out that it was the alien's presence within its territorial jurisdiction that gave the Judiciary power to act." *Id.* at 771, 70 S.Ct. at 940. *See also Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

The plaintiff urges this Court to adopt the position that if an adequate "nexus" exists between the state and nonresident alien the Equal Protection Clause applies. The plaintiff argues that a partial payment of benefits to a nonresident alien establishes such a nexus and that she therefore is entitled to the protection of the Equal Protection Clause. *See generally Jalifi v. Industrial Commission,* 132 Ariz. 233, 644 P.2d 1319, 1321 n.2 (Ariz.Ct.App.), *appeal dismissed,* 459 U.S. 899, 103 S.Ct. 200, 74 L.Ed.2d 161 (1982).

The argument is without merit; if the state were to grant no death benefits to nonresident aliens whatsoever, there would be no nexus and no denial of equal protection. There is no basis in reason for the position that the Fourteenth Amendment is not applicable when the discrimination is complete, but is applicable when the discrimination is only partial.[3]

### IV.

 Finally, the plaintiff asserts that the Utah statute interferes with the plenary power of Congress to control the immigration and naturalization of aliens under *Graham v. Richardson,* 403 U.S. 365, 377, 91 S.Ct. 1848, 1854, 29 L.Ed.2d 534 (1971). In that case, the issue was the constitutionality of Arizona and Pennsylvania laws which made lawfully admitted aliens ineligible for state welfare benefits until they satisfied state durational residency requirements. A federal statute declared that aliens likely to become indigent should not be admitted to the United States or should be required to post bond, but that lawfully admitted aliens who became indigent after entry were entitled to the same benefits as all citizens. *Id.* at 377–78, 91 S.Ct. at 1854–55. The Court held that state statutes which set durational residency requirements for aliens requiring public assistance were unconstitutional because they were in conflict with the federal scheme by "overriding national policies in an area constitutionally entrusted to the Federal Government." *Id.* at 378, 91 S.Ct. at 1855. *Graham* is distinguishable. Unlike the statutes held unconstitutional in *Graham,* the Utah statute does not place a burden on an alien's entrance into, or residence within, this country, or on an alien's dependents.

The plaintiff further asserts:

First, employers might be encouraged to seek out and hire aliens in preference to citizens in order to reduce their exposure to workers compensation claims. Second, nonresident aliens may be encouraged to join the resident worker so that, should anything happen to the worker, they could enjoy full benefits. Third, aliens may not come to Utah to work.

The statute at issue has been on the books a long time. The plaintiff offers no evidence that it has had any such effects. Nor does she demonstrate how such effects would interfere with federal statutes or policy.

In sum, we hold that § 35–1–72 is constitutional.

Affirmed.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ.

---

**3.** As noted, New Mexico denies nonresident aliens benefits completely, *Pedrazza,* 94 N.M. 59, 607 P.2d at 599, and Arizona reduces them by 40 percent. *Jalifi,* 132 Ariz. at 235, 644 P.2d at 1321. In fact, the dependents of nonresident aliens have been the subject of special workmen's compensation provisions in all but nine states, and residents of Canada are usually exempted from those special rules. 2 A. Larson, *supra,* § 63–51.